Basil Osbourne THOMPSON, Plaintiff,

v.

Daniel B. SWEET, Defendant.

No. 00–CV–929.

United States District Court,
N.D. New York.

March 11, 2002.

Ackerman, Wachs & Finton, P.C., Attorneys for Plaintiff, Albany, Fred Stanton Ackerman, Esq.

Hon. Eliot Spitzer, Attorney General of the State of New York, Attorney for Defendant, Department of Law, Albany, Lisa Ullman, Esq., Asst. Attorney General, of Counsel.

## *MEMORANDUM–DECISION and ORDER*

HURD, District Judge.

## I. *INTRODUCTION*

Plaintiff Basil Osbourne Thompson ("Thompson" or "plaintiff") commenced the instant action pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Plaintiff also

1. The plaintiff concedes that his claim for defamation is time barred by the one-year statute of limitations, and hereby withdraws this claim.

2. The records did not indicate whether Thompson was convicted of a felony or a misdemeanor, but some unknown person had

asserts state law claims for abuse of process, malicious prosecution, false arrest, unlawful imprisonment, negligence, and intentional infliction of emotional distress.[1] He seeks compensatory and punitive damages. Defendant, New York State police officer, Daniel B. Sweet ("Officer Sweet"), has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff opposes. Oral argument was heard on August 24, 2001, in Albany, New York. Decision was reserved.

## II. *FACTS*

The following are the facts in the light most favorable to the non-moving plaintiff. Thompson is a resident alien who was convicted in 1992 in federal court of a misdemeanor for filing false citizenship papers. In that same year, he was also convicted in state court of endangering the welfare of a minor.

On four separate occasions during 1998, Thompson purchased firearms at a Walmart store in Hudson, New York. On each of these occasions, plaintiff filled out a form required by the United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms ("ATF") indicating (1) that he had never been convicted of a felony, and (2) that he was a United States citizen. Subsequently, on April 9, 1999, his name appeared during an ATF records check as someone who might have purchased the guns illegally based on his prior criminal record. The case was referred to Officer Sweet for investigation. Based on the records received by Officer Sweet,[2] and his subsequent interview with the Walmart employee who sold Thompson the

made a handwritten notation "convicted of felony, Tom O'Connell" on one of the records. Tom O'Connell was the federal agent who had initially arrested Thompson for the false citizenship charge in 1992—in which Thompson was charged with a felony, but pled to a misdemeanor. (Sweet Aff., Exh. G.)

guns, Sweet prepared an affidavit to obtain an arrest warrant. The warrant stated that Thompson had lied about the fact that he was a convicted felon. A warrant was issued on June 8, 1999, for plaintiff's arrest on four counts of criminal possession of a weapon. Plaintiff was arrested on July 1, 1999.

At the time of his arrest, Thompson provided the state police with a certificate of conviction that showed he had been convicted of a misdemeanor, not a felony. Thompson requested that the police officers contact the United States Probation Office in Albany to confirm that he had never been convicted of a felony. The police officers then used their radio dispatch instrument to contact Officer Sweet. The officers informed Officer Sweet that Thompson had documents which indicated that he had only been convicted of a misdemeanor. However, Thompson was still arrested and held in jail for twelve days on $30,000 bail. This first set of charges were subsequently dismissed.

After Thompson's initial arrest, Officer Sweet signed four additional felony complaints against plaintiff and he was arrested again based on the fact that (1) Thompson's prior arrest for endangering the welfare of a child was a "serious crime" that prevented him from owning a weapon under New York law, and (2) he had lied on the ATF form when he indicated that he was an United States citizen. Thompson ultimately pled guilty to a misdemeanor based on the second set of charges.[3]

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affida-

vits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

---

**3.** Because plaintiff pled guilty to a misdemeanor on this second set of charges, proba-

ble cause is assumed and the discussion that follows is based on plaintiff's first arrest.

### B. *False Arrest and Unlawful Imprisonment Claim*

■ Defendant Sweet seeks summary judgment dismissing the plaintiff's false arrest and unlawful imprisonment claim against him on the ground that plaintiff's first arrest was supported by probable cause. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (citation omitted). Under New York law, in order to assert a false arrest claim, a plaintiff must demonstrate that "the defendant intentionally confined him without his consent and without justification." *Id.* "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994)).

■ Probable cause to arrest exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995)(internal quotations omitted). In order to determine if probable cause existed, "we consider the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

■ The issue of whether an arresting officer had probable cause to make the arrest may be determined as a matter of law if "the pertinent events and the knowledge of the officers" are not in dispute. *Weyant*, 101 F.3d at 852. If, however, the determination of whether probable cause existed is "predominately factual in nature," such a decision should be made by a jury. *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir.1994).

■ The defendants argue that based upon the fact that Officer Sweet took all the information he had and presented it to a magistrate who then issued a warrant, probable cause existed. However, the factual circumstances leading up to plaintiff's arrest are sharply disputed by the parties. The plaintiff claims that upon being arrested, he presented his arresting officers with a certificate of conviction that showed he had been convicted of a misdemeanor not a felony. Further, a question of fact exists concerning whether Officer Sweet had knowledge of the fact that plaintiff was only convicted of a misdemeanor prior to the plaintiff being brought into custody. Viewing the disputed facts in a light most favorable to the non-moving plaintiff, the defendant's motion for summary judgment with respect to the plaintiff's false arrest and unlawful imprisonment claim must be denied.

### C. *Abuse of Process and Malicious Prosecution Claim*

■ The elements of a cause of action for malicious prosecution under both Section 1983 and state law are: (1) the initiation and continuation of a criminal proceeding by the defendant against the plaintiff; (2) lack of probable cause for commencing the criminal proceeding; (3) actual malice; and (4) the termination of the proceeding in favor of the accused.[4] *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994).[5] Viewing the evidence in the light most favorable to Thompson, a jury could

---

**4.** In this case, plaintiff's proceeding was terminated in his favor on January 24, 2000, when a Greensport Town Justice dismissed the first set of felony complaints against him.

**5.** In addition, there is case law suggesting

conclude that he has a valid claim for malicious prosecution.

As with a claim for false arrest, the absence of probable cause is a necessary element of a claim for malicious prosecution. Again, defendant argues that because there was a warrant for plaintiff's arrest, this claim must be dismissed. Thompson argues that Officer Sweet's receipt of exonerating information dissipated whatever cause there may have been at the time of the issuance of the warrant.

■ A police officer can be liable for a claim of malicious prosecution where the officer had probable cause to effect an arrest, but discovered exculpatory evidence prior to the formal charge of the arrestee by the prosecutor or grand jury. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571–72 (2d Cir.1996).

Notwithstanding the applicability of *Lowth* to the instant case, other cases which have considered the issue of a police officer's liability for malicious prosecution have focused upon the "chain of causation" between the conduct of the officer and the ongoing criminal prosecution. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir.1999). Under this analysis, once an arrestee is formally charged, the arresting officer is generally no longer responsible for the prosecution, and the chain of causation between the officer's conduct and the claim for malicious prosecution is broken by the intervening independent actions of the court or prosecutor. *Id.*

However, the Second Circuit has noted that this result is not inevitable. Where there is evidence that the officer misled or provided misleading information, the officer's subsequent failure to disclose exculpatory evidence can support a cause of action for malicious prosecution. *Id. See also Zahrey v. Coffey*, 221 F.3d 342, 351–52 (2d Cir.2000) ("Some courts have sought to resolve the [chain of causation issue] by considering the intervening act of a decision-maker not to be an exercise of truly independent judgment, and therefore reasonably foreseeable, if caused by pressure or misleading information provided by the actor whom the plaintiff seeks to hold liable.") (citing, *inter alia, Townes*, 176 F.3d at 147).

■ In this case, there are allegations that, among other things, Officer Sweet provided misleading information to the officers who arrested the plaintiff and testified at his arraignment. So a reasonable jury could conclude that, as the officer who commenced the prosecution, Officer Sweet's intentional withholding of information that completely exonerated the plaintiff constituted an attempt to mislead. Where, as here, there is dispute as to whether Officer Sweet knew that plaintiff had only been convicted of a misdemeanor, or whether he intentionally withheld information of Thompson's innocence, there is sufficient basis to submit the question of causation to a jury.

### D. Qualified Immunity

■ Officer Sweet seeks qualified immunity with respect to plaintiff's claims of false arrest, unlawful imprisonment and malicious prosecution. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits

that plaintiffs bringing such claims must also demonstrate the existence of a post-arraignment deprivation of liberty rising to the level of a Fourth Amendment violation because they are predicated upon a violation of the Fourth Amendment right to be free from unreasonable seizure. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.

1995); *but see Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996) (addressing malicious prosecution claim without reference to requirement of deprivation of liberty). Because Thompson alleges that he was required to remain in jail for twelve days during the pendency of the prosecution, he has alleged a sufficient deprivation of liberty.

for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999)(citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ricciuti,* 124 F.3d at 127). A decision in favor of a public official based on qualified immunity is appropriate if (1) the conduct attributed to him is not prohibited by federal law, or if such conduct is so prohibited; (2) that the plaintiff's right not to be subjected to such conduct was unclearly established at the time of the defendant's actions; or (3) if it was not objectively reasonable for the official to know that his conduct violated that right. *See X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999); *see also Thomas,* 165 F.3d at 142–43. "The objective reasonableness test is met ... if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Thomas,* 165 F.3d at 143 (quoting *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995))(quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

In the present case, due to the significant disparities in the facts as alleged by both sides, and the fact that the facts must be viewed in light most favorable to the non-moving plaintiff, Officer Sweet is not entitled to qualified immunity as a matter of law. Whether or not questions of fact on this issue are to be presented to a jury must await trial. *See Golino v. City of New Haven,* 950 F.2d 864, 871 (2d Cir.1991); *see also Warren v.*

*Dwyer,* 906 F.2d 70, 74 (2d Cir.1990)(stating that, where factual issues exist prior to trial, defense of qualified immunity may be raised at the close of plaintiff's case on a motion for a directed verdict and on a subsequent motion for judgment notwithstanding the verdict)(citing *Krause v. Bennett,* 887 F.2d 362, 365 (2d Cir.1989)).

**E.** *Intentional Infliction of Emotional Distress Claim* [6]

In New York, "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort," when traditional tort remedies are unavailable. *See EEOC v. Die Fliedermaus, L.L.C.,* 77 F.Supp.2d 460, 472 (S.D.N.Y.1999)(quoting *McIntyre v. Manhattan Ford, Lincoln–Mercury, Inc.,* 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1st Dep't 1998)). Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *Hansel v. Sheridan,* 991 F.Supp. 69, 75 (N.D.N.Y.1998). In the instant case, since the conduct complained of is encompassed in plaintiff's claims for malicious prosecution, false arrest and unlawful imprisonment, plaintiff's claim for intentional infliction of emotional distress must be dismissed.[7]

**F.** *Negligence*

Plaintiff claims that Officer Sweet was negligent in his failure to follow through more thoroughly with his investigation prior to filing the first set of charges against Thompson. Plaintiff argues that if Officer Sweet had exercised

---

**6.** It should be noted that plaintiff's claim for intentional infliction of emotional distress is also time-barred. The statute of limitations for a claim of intentional infliction of emotional distress is one year. Plaintiff's claims are with respect to actions that took place on June 7, 1999, however his complaint was not filed until June 14, 2000.

**7.** Plaintiff's assertion that the claims are not duplicative because his intentional infliction of emotional distress claim encompasses a separate and distinct theory of liability is not persuasive. Such damages, if proven, are available in the event that his malicious prosecution, false arrest, and unlawful imprisonment claims are successful.

reasonable care in his investigation he would have discovered that Thompson was only convicted of a misdemeanor and not a felony. However, it is "of no consequence that a more thorough or more probing investigation might have cast doubt upon" the arrestee's culpability. *United States v. Manley*, 632 F.2d 978, 984 (2d Cir.1981). Accordingly, plaintiff's cause of action for negligence must be dismissed.

### G. Other Constitutional Claims

█ Plaintiff asserts that Officer Sweet violated his right to effective assistance of counsel because he withheld exonerating information from his attorney. This claim must fail because plaintiff and his attorney knew that he was only convicted of a misdemeanor and had the opportunity to present that information in court.

█ The Eighth Amendment prohibits cruel and unusual punishment against prisoners. Plaintiff claims that he was subject to cruel and unusual punishment as a result of his twelve day incarceration. However, even viewing the facts in the light most favorable to plaintiff, there is no allegation that Officer Sweet ever had contact with the plaintiff in jail. Accordingly, this claim must also fail.

### IV. CONCLUSION

Questions of fact preclude summary judgment with respect to the plaintiff's § 1983 claims for false arrest and unlawful imprisonment and malicious prosecution. These disputed questions of fact also preclude a determination that Officer Sweet is entitled to qualified immunity as a matter of law. Finally, the defendant's motion with respect to plaintiff's state law claims for intentional infliction of emotional distress, negligence, and defamation, as well as his remaining constitutional law claims must be granted.

Accordingly, it is

ORDERED that the motion for summary judgment by defendant Daniel B. Sweet is GRANTED in part and DENIED in part:

1. The motion is GRANTED to the extent that

a. Plaintiff's constitutional claims for cruel and unusual punishment and ineffective assistance of counsel are DISMISSED; and

b. Plaintiff's state law claims for intentional infliction of emotional distress, negligence and defamation are DISMISSED;

2. The motion is DENIED in all other respects.

IT IS SO ORDERED.