Richard F. **THOMAS**, Plaintiff,

v.

**COUNTY OF PUTNAM**, Putnam County Sheriff's Department, Putnam County District Attorney's Office, Paul Velardi, Joseph A. Charbonneau, Robert Langley and Michael Nalbone, Defendants.

No. 02 CIV. 7904(WCC).

United States District Court, S.D. New York.

May 7, 2003.

Galgano & Sullivan, Attorneys for Plaintiff, White Plains, Kiernan James Sullivan, Esq., Of Counsel.

Steinberg & Cavaliere, LLP, Attorneys for Defendant, Paul Velardi, White Plains, NY, Neil W. Silberblatt, Esq., Of Counsel.

Servino Santangelo & Randazzo LLP, Attorneys for Defendants County of Putnam, Putnam County Sheriff's Department, Putnam County District Attorney's Office, Joseph A. Charbonneau, Robert Langley and Michael Nalbone, White Plains, NY, James A. Randazzo, Esq., Of Counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Richard F. Thomas brings the instant action against defendants County of Putnam, Putnam County District Attorney's Office, Putnam County Sheriff's Department, Paul Velardi, Joseph A. Char-

bonneau, Robert Langley and Michael Nalbone.[1] Plaintiff claims that defendants conspired to prosecute criminal complaints against him in bad faith, with the intent of depriving plaintiff of his constitutional rights in violation of 42 U.S.C. § 1983. Plaintiff also asserts state law claims for false imprisonment, false arrest, malicious prosecution, negligence and intentional infliction of emotional distress. Defendant Charbonneau now moves for summary judgment on the grounds that he is immune from suit under the doctrine of absolute immunity. Defendants Langley and Nalbone move for summary judgment on the grounds that they had probable cause to arrest plaintiff or, in the alternative, that defendants are entitled to qualified immunity. The remaining municipal defendants move for summary judgment based on plaintiff's failure to allege that the deprivation of his constitutional rights resulted from the enforcement of a municipal policy or custom. For the reasons stated below, these motions are granted in their entirety.

## BACKGROUND[2]

Plaintiff's claims against all defendants arise from, and relate to, various criminal complaints filed by Valerie Buchanan against plaintiff and the investigation and prosecution of those complaints. On November 22, 2000, Buchanan, with whom plaintiff had been having an extra-marital affair, walked into the Putnam County Sheriff's Department to report that she had just been assaulted by plaintiff. (Langley Aff. ¶ 3.) In her criminal complaint, Buchanan alleged that plaintiff had physically assaulted her when she told him that she wished to terminate their relationship. In his affidavit, Deputy Langley states that he observed numerous abrasions and areas of swelling or bleeding about the body of Buchanan and that she complained of pain. (*Id.* ¶ 4.) Buchanan signed an information under penalty of perjury alleging that she had been assaulted by plaintiff.[3] Deputy Langley then called an ambulance which responded and transported her to the Putnam Hospital Center for treatment of her injuries. According to Langley, the emergency room doctor, Dr. Norman, advised him that Buchanan's injuries were consistent with that of a person being kicked, as she had alleged plaintiff had done to her. (*Id.* ¶ 5.) Subsequently, Deputy Langley forwarded the information signed by Buchanan to the Town of Carmel Justice Court in order to obtain an arrest warrant for plaintiff. (*Id.* ¶ 7.) A warrant was apparently never issued however, as plaintiff surrendered himself at the Putnam County Sheriff's Department.[4] Plaintiff was processed and

1. This action is being brought against defendants Velardi and Charbonneau in their individual capacities as well as their capacities as Assistant District Attorneys and against defendants Langley and Nalbone in their individual capacities as well as their capacities as employees of the Putnam County Sheriff's Office. This action was also brought against defendant Paul Velardi in his individual capacity as well as his capacity as an Assistant District Attorney. This Court issued an Opinion and Order dated April 21, 2003 granting defendant Velardi's motion for summary judgment on the grounds that he was absolutely immune from suit, and dismissing all claims against defendant Velardi.

2. Other relevant facts are set forth in this Court's prior Opinion and Order dated April 21, 2003, with which this Court assumes familiarity.

3. Photographs of the injuries to Buchanan's back were taken at the Putnam County Sheriff's Department and are attached as an exhibit to defendants' memorandum of law. (Defs.Mem.Supp.Summ. J., Ex. B.). Plaintiff claims that the photographs fail to depict any injury to Buchanan and that she was in fact not visibly injured. (Thomas Aff. ¶ 4.)

4. On November 23, 2000, Deputy Langley did speak to plaintiff by telephone and he claimed that Buchanan was the initial aggressor and

issued an appearance ticket to appear in Carmel Justice Court on the charge of assault in the third degree. (*Id.* ¶ 8.)

As a result of this alleged assault, Buchanan sought and obtained an Order of Protection against plaintiff which barred him from contacting or attempting to contact Buchanan. (Velardi ¶ 9.) On January 24, 2001, Buchanan filed another criminal complaint against plaintiff, claiming that he had violated the Order of Protection. A third criminal complaint was filed alleging that plaintiff had again violated the Order of Protection by repeatedly calling Buchanan at her residence and by otherwise harassing her. (*Id.* ¶ 13.) For these alleged violations of the Order of Protection, plaintiff was charged with aggravated harassment and criminal contempt.

All of Buchanan's various criminal complaints against plaintiff were referred to the Putnam County District Attorney's Office for investigation and possible prosecution. Although defendant Charbonneau was initially assigned to the matter, because he had previously represented Buchanan in an unrelated family court matter, application was made to the District Attorney's Office and an Order of County Court Judge Robert E. Miller was issued appointing defendant Velardi as Special Prosecutor to investigate Buchanan's criminal complaints against plaintiff. (Thomas Aff. ¶ 10.) On or about June 22, 2001, a grand jury was convened by the District Attorney's Office for the purpose of investigating various criminal complaints—including, but not limited to, Buchanan's complaints against plaintiff—and to determine whether there was probable cause to believe that criminal conduct had in fact occurred. (Velardi Aff. ¶ 19.) Following its deliberations, the grand jury declined to indict plaintiff on charges of assault,

that he pushed her only after she attacked him while he was on the phone. (Langley Aff.

aggravated harassment and criminal contempt.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y. 1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Ticali,* 41 F.Supp.2d at 255. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994).

¶ 6.)

## II. *Deputies Langley and Nalbone*

### A. *Probable Cause*

 Plaintiff's claims against Deputy Langley center on the charge that there was no probable cause to arrest plaintiff for the assault of Buchanan. Probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). Probable cause requires only a "probability or a substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The probable cause determination is based on the totality of the circumstances at the time of the arrest. *See Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989). An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995).

The predicate for Deputy Langley's conclusion that probable cause existed to arrest plaintiff for assault was the sworn statement provided by the victim, Buchanan. However, plaintiff argues that there is a clear factual dispute involving the credibility of Buchanan in signing the information charging plaintiff with assault. Specifically, plaintiff suggests that Deputies Langley and Nalbone were aware: (1) of Buchanan's reputation in the community in terms of her prior involvement with the Sheriff's Department; (2) that Buchanan had an intimate or personal relationship with employees from the department; (3) that Buchanan was being represented by the local prosecutor in a civil matter and (4) that Buchanan had a history of substance abuse and of making prior false allegations against others, including former boyfriends. (Pl. Mem. Opp. Summ. J. at 6.)

In addition to the signed information, however, there are also the injuries to Buchanan's body that Deputy Langley observed which tend to support the existence of probable cause. *See Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997) (finding probable cause even though police officer chose to believe claimed victim's version of a fight based on visible injuries); *Gentile v. City of New York,* 2003 WL 1872651, at *2 (S.D.N.Y. Apr.10, 2003). Admittedly, the photographs submitted by defendants are of poor quality, making it difficult to determine whether the marks on Buchanan's body are in fact injuries or just blemishes associated with the copying process. However, plaintiff appears to concede that there was some injury where he states in his opposition papers that Buchanan "did not display the *type* of injuries that would be consistent with the violent beating she described." [5] (*Id.* at *7.) Moreover, Deputy Langley apparently thought that Buchanan's injuries were severe enough to warrant calling an ambulance to transport her to the Putnam Hospital Center for treatment of her injuries. (Langley Aff. ¶ 5.) We conclude therefore, as a matter of law, that the sworn information before Deputy Langley, supported by his observations of Buchanan's injuries, was suffi-

---

**5.** "Courts should not lightly second guess the on-the-spot observations of police officers trained to detect wrongdoing...." *U.S. v.* *Restrepo,* 890 F.Supp. 180, 194 (E.D.N.Y. 1995).

cient to establish probable cause to arrest plaintiff.

We reach the same conclusion with respect to Deputy Nalbone. On April 3, 2001, Buchanan arrived at the Putnam County Sheriff's Department and alleged that plaintiff had again violated her existing Order of Protection.[6] (Nalbone Aff. ¶ 6.) On April 4, 2001, Deputy Nalbone obtained a two-page written statement from Buchanan's daughter, Karen Savenik, which was affirmed by her under penalty of perjury, wherein she alleged that on two separate occasions plaintiff had telephoned the Buchanan residence and made threatening remarks. Buchanan also provided a signed statement under oath dated April 4, 2001 confirming the allegations made by her daughter against plaintiff. Deputy Nalbone then drafted criminal complaints charging plaintiff with the crimes of Criminal Contempt in the First Degree and Aggravated Harassment in the Second Degree.[7] (*Id.* ¶ 10.)

We find these facts sufficient for Deputy Nalbone to meet his burden for establishing probable cause. Not only was there the sworn statement of the victim, Buchanan, but Deputy Nalbone also based the arrest on Buchanan's daughter's signed statement. Moreover Deputy Nalbone verified Buchanan's claims by confirming that there was an Order of Protection

issued by the court in favor of Buchanan against plaintiff before drafting the charges. *See Lennon v. Miller,* 66 F.3d 416 (2d Cir.1995) (finding probable cause where officers can verify facts suggestive of criminal activity); *Illinois v. Gates,* 462 U.S. 213, 241, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (indicating that information received from an anonymous informant may constitute probable cause if the informant can be independently corroborated).

## B. *Qualified Immunity*

 Even assuming probable cause was not established, Deputies Langley and Nalbone have a valid defense of qualified immunity. A police officer is entitled to qualified immunity as a matter of law if the evidence shows "either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). In situations where probable cause is required, this standard requires something less than actual probable cause. This is defined by the Second Circuit as "arguable probable cause," and is described as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same

---

**6.** On January 24, 2001, Buchanan walked into the Sheriff's Department and advised Deputy Nalbone that she had an Order of Protection against plaintiff stemming from the November 22, 2000 assault. (Nalbone Aff. ¶ 3.) Buchanan further advised Deputy Nalbone that plaintiff had threatened her with physical harm if she did not drop the assault charge which she had filed against him. Buchanan affirmed under penalty of perjury a three page statement dated January 24, 2001 which detailed her allegations against plaintiff. Due to the nature of the allegations, as required, Deputy Nalbone contacted Putnam County District Attorney's Office who advised

Deputy Nalbone to turn the case over to their office, which he did. (*Id.* ¶ 5.)

**7.** Although Deputy Nalbone claims that the court issued a warrant for plaintiff's arrest, there are only copies of the Sheriff Department's computer entries for the warrant, not an actual signed warrant included as an exhibit to his memorandum of law. In any event, plaintiff surrendered himself at the Sheriff's Department on April 6, 2001 where, after processing plaintiff, Deputy Nalbone transported him to the Town of Patterson Justice Court where he was arraigned and released on his own recognizance. (Nalbone Aff. ¶ 14.)

knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable. Even on summary judgment, where all facts must be viewed in the light most favorable to the non-moving party, for the purpose of qualified immunity and arguable probable cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences.

*Cerrone v. Brown,* 246 F.3d 194, 203 (2d Cir.2001).

Deputy Langley arrested plaintiff for assault based on the injuries he observed on the body of Buchanan as well as her signed information alleging that she had been assaulted by plaintiff.[8] Deputy Nalbone arrested plaintiff after: (1) Buchanan complained that plaintiff had again violated her existing Order of Protection, (2) obtaining a sworn statement from Buchanan's daughter alleging two separate violations of the Order of Protection as well as signed statement from Buchanan confirming her daughter's report and (3) verifying that an Order of Protection had in fact been issued in favor of Buchanan. Certainly officers of reasonable competency could disagree on whether, based on these facts, the probable cause test was met. Accordingly, even if there is no actual probable cause in this case, there is "arguable" probable cause that entitles Deputies Langley and Nalbone to qualified immunity.

## III. *Defendant Charbonneau*

### A. *Absolute Immunity*

 Prosecutors facing individual capacity liability can claim absolute or qualified immunity. In assessing a prosecutor's claim of absolute immunity, the court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996). Absolute prosecutorial immunity is generally limited to litigation-related activities and decisions whether to prosecute. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). For example, a prosecutor is often immune from liability when evaluating and organizing evidence for presentation to a grand jury. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). In addition, the actual presentation of evidence to a grand jury after a decision to seek an indictment has been made falls squarely within the prosecutor's traditional function. *Id.*

 By contrast, absolute immunity is not available when a prosecutor undertakes conduct that is beyond the scope of his or her litigation-related duties. Thus, when a prosecutor acts in an investigative or administrative capacity rather than in a prosecutorial one, absolute immunity is not available. *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995). For example, immunity is not available when a

---

**8.** In *Duamutef v. Moran,* 1998 WL 166838, at *1 (Apr. 7, 1998 N.D.N.Y.), the court found that defendants were not entitled to a qualified immunity defense where they failed to provide affidavits or other sworn statements regarding the facts and circumstances of their seizure of materials from plaintiff's cell.

prosecutor releases information or evidence to the media, *Buckley*, 509 U.S. at 276–78, 113 S.Ct. 2606; *Powers v. Coe*, 728 F.2d 97, 103 (2d Cir.1984), authorizes or directs the use of wiretaps, *Powers*, 728 F.2d at 103, or performs the functions normally performed by the police such as assisting in the execution of a search or seizure. *See Buckley*, 509 U.S. at 273, 113 S.Ct. 2606. Although declining to establish a bright-line test, the Second Circuit has observed that "in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts. Conversely, where no proceedings have begun, qualified immunity is the norm." *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir.1987).

Defendant Charbonneau maintains that his involvement with Buchanan's assault complaint began on January 22, 2001 where he was preparing to appear in the Carmel Justice Court that evening. (Charbonneau ¶ 4.) At that time, he realized that he was representing the complaining witness, Buchanan, in an unrelated family court matter and therefore, when plaintiff appeared in court, he requested that the matter be adjourned to February 13, 2001, so that another prosecutor could be appointed to handle the matter. (*Id.* ¶ 5.) The court agreed to adjourn the case to that date. Prior to the next court appearance, and as required by the District Attorney's Office, Charbonneau requested in writing, that the case against plaintiff be re-assigned to another prosecutor. Thereafter defendant Paul Velardi was appointed as Special Prosecutor. (*Id.* ¶ 7.) Plaintiff claims that Charbonneau's involvement extended beyond the January 22, 2001 court appearance. According to plaintiff, during the court appearance the Order of Protection was issued at the request of Charbonneau and, after the matter was adjourned, and after Charbonneau became aware of the conflict

due to his representation of Buchanan, he caused a subpoena to be issued for Buchanan's medical records. (Pl. Mem. Opp. Summ. J. at 2.) Additionally, plaintiff maintains that Charbonneau did not initially request a special prosecutor, but, in February, merely requested that another Assistant District Attorney in his office handle the case. It was not until April, almost five months after plaintiff's arrest, that Special Prosecutor Velardi was appointed. (*Id.* at 3.)

At the outset we note that even if Charbonneau sought the Order of Protection and caused a subpoena to be issued for Buchanan's medical records, these acts would fall under the rubric of the traditional prosecutorial functions of marshalling evidence, initiating a prosecution, and advocating on behalf of the County. *See McKeon v. Daley*, 101 F.Supp.2d 79, 88 (N.D.N.Y.2000); *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir.2000) (finding that prosecutors were entitled to absolute immunity for their decision to seek temporary restraining orders). Consequently, absolute immunity would extend to these tasks. However, the issue of whether absolute immunity should shield Charbonneau against plaintiff's allegations that he proceeded in the prosecution of plaintiff after becoming aware of the conflict of interest due to his private representation of Buchanan deserves greater discussion.

Plaintiff cites no caselaw in support of his argument that Charbonneau should lose his absolute immunity based on the continued prosecution of plaintiff despite his awareness of the conflict resulting from his ongoing representation of Buchanan. Our research has uncovered one case within this district which speaks in part to this issue. *See Rudow v. City of New York*, 642 F.Supp. 1456, 1462–63 (S.D.N.Y.1986). There the court recognized that "the shield of absolute immunity may be lost by a

prosecutor when acting on behalf of a private client where the prosecutor purports to act in his public capacity, but nevertheless advances his own private interests." *Id.* at 1461. In such circumstances, courts have found that a grant of immunity would not advance the policy reasons that support the absolute immunity doctrine.[9] This is in essence the argument plaintiff advances—that Charbonneau continued to prosecute plaintiff because that was in the interest of Buchanan, his private client in an unrelated family court matter. However, in one of the cases cited by the *Rudow* court, *Beard v. Udall,* 648 F.2d 1264 (9th Cir.1981), it is clear that the circumstances in which courts strip a prosecutor of absolute immunity in this context are not present in this case. There the court declined to extend absolute immunity where a county attorney, who also maintained a private practice, acting in his private capacity petitioned a state judge to modify a client's original divorce decree and then, in his public capacity, caused a baseless criminal charge to be filed against his client's former husband. *Id.* at 1271–72. In the instant case however, we have already concluded that there was probable cause or, at the very least, arguable probable cause to believe that plaintiff had engaged in criminal activity. Consequently, imbuing Charbonneau with absolute immunity would not run counter to the policy reasons that support the doctrine.

## IV. *Municipal Liability*

Because, as discussed above, plaintiff's constitutional rights were not violated, there can be no cognizable claim against the municipal defendants. *See Dodd v. Norwich,* 827 F.2d 1, 8 (2d Cir.1987) (holding that a constitutional violation by the

individual defendants is required in order to sustain a claim against the municipality); *Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Evans v. Avery,* 100 F.3d 1033, 1040 (1st Cir.1996) (refusing to find municipal liability where there was no underlying constitutional violation in a police pursuit case). In this case, we have established that in prosecuting plaintiff, Charbonneau was acting in his core court-related role as a prosecutor and thus shielded with absolute immunity from suit. Additionally, we have concluded that Deputies Langley and Nalbone had probable cause to arrest and charge plaintiff and that, if they did not, they were at least objectively reasonable in their determination of probable cause and thus entitled to qualified immunity. Consequently, since plaintiff cannot sustain a claim for constitutional deprivation by defendants Charbonneau, Langley or Nalbone, plaintiff's claim of municipal liability also fails against the remaining municipal defendants.

## V. *Remaining State Law Claims*

Plaintiff also seeks compensatory and punitive damages based on state law claims of false arrest and imprisonment, malicious prosecution, negligence and intentional infliction of emotional distress. Having determined that plaintiff's federal claims under § 1983 must be dismissed, and there being no diversity of citizenship between the parties, the Court could decline to exercise jurisdiction over the state law claims. *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990). ("It is well settled that if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.") Nevertheless, in the interest of

---

**9.** The policy supporting the absolute immunity doctrine relates to the cost that would otherwise be exacted, *i.e.,* that government counsel would be unable to perform their duties without intimidation or harassment. *Butz v. Economou,* 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *see also Imbler,* 424 U.S. at 409, 96 S.Ct. 984.

judicial economy, we will address the merits of plaintiff's state law claims.

 Our finding that there was probable cause to arrest plaintiff compels us to dismiss plaintiff's state law claims of false arrest and imprisonment and malicious prosecution. *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir.2003) ("to state a claim under New York law for the tort of malicious prosecution, a plaintiff must show ... that there was no probable cause for the proceeding ..."); *Moscoso v. City of New York*, 92 F.Supp.2d 310, 312 (S.D.N.Y.2000) (holding that because there was probable cause for arresting plaintiff, plaintiff's claims, whether under section 1983 or New York State law, that were predicated on false arrest or false imprisonment compelled dismissal). Turning to the negligence claim, plaintiff must show: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty, and (3) injury substantially caused by that breach. *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir.2002). Because we have found that defendant Charbonneau acted within his role as a prosecutor and that Deputies Langley and Nalbone had probable cause to arrest plaintiff, there is no evidence to show either that any of them breached a duty owed to plaintiff or that he suffered sufficient injury to sustain his negligence claim. Finally, as to plaintiff's claim for intentional infliction of emotional distress, in New York, this is a theory of recovery that is to be invoked only as a last resort, when traditional tort remedies are unavailable. *See EEOC v. Die Fliedermaus, L.L.C.*, 77 F.Supp.2d 460, 472 (S.D.N.Y.1999). Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *Hansel v. Sheridan*, 991 F.Supp. 69, 75 (N.D.N.Y.1998). In the instant case, since the conduct complained of is encompassed in plaintiff's claims for malicious prosecu-

tion and false arrest and imprisonment, plaintiff's claim for intentional infliction of emotional distress must be dismissed. *See Thompson v. Sweet*, 194 F.Supp.2d 97, 103 (N.D.N.Y.2002). Accordingly, plaintiff's state law claims are dismissed.

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are granted in their entirety and all claims against defendants are dismissed with prejudice.

**SO ORDERED.**