Daniel **DORN**, Plaintiff

v.

Michael **MAFFEI**, Individually and as a Police Officer for the City of White Plains, The City of White Plains, Margaret King, Defendants

No. 02 CIV.2001(SCR).

United States District Court, S.D. New York.

Sept. 6, 2005.

Jeffrey L. Bernfeld, Dematteo Bernfeld, LLP, New York City, for Plaintiff.

Joseph A. Maria, Joseph A. Maria, P.C., White Plains, NY, Charles F. Sanders, Eliot Spitzer Attorney General of the State of New York, New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

## I. Background:

### A. Statement of Facts:

Daniel Dorn (the "Plaintiff") is an individual residing, at all relevant times, in Poughkeepsie, New York.

The City of White Plains ("City") is a municipal corporation chartered under the constitution and laws of the state of New York. Michael Maffei ("Maffei") is a police detective employed by the City. Margaret King ("King"; Maffei, City and King are collectively referred to herein as "Defendants") is the Regional Director of the New York State Division of Human Rights ("DHR").

Plaintiff filed three employment discrimination claims with the DHR during the period from 1989 to 1993. In 1993, the DHR determined that, with respect to each claim, there was no probable cause to believe that a discriminatory practice had occurred, and all three claims were dis-

missed. At some point thereafter, the Plaintiff brought an Article 78 proceeding in New York State Supreme Court, Dutchess County, to set aside the DHR's determinations, but Plaintiff was unsuccessful in that action.

In September 2000, Plaintiff sent a letter, dated September 14, 2000, to George Treutle, a former DHR Regional Director in White Plains, NY, who apparently had some involvement in Plaintiff's prior claims before the DHR. Along with this letter, Plaintiff included a personal check, payable to Treutle. King replied to Dorn's letter, informing the Plaintiff that Treutle was no longer employed by the DHR.

In October 2000, King received another letter, dated October 23, 2000, from Plaintiff, which also enclosed a personal check from Plaintiff, payable to King for $100. In this letter, Plaintiff stated the following:

> I intend to be given these rights at any cost. I am ready to do anything to get these rights and my questions answered.... I intend to commit mutch (sic) more serious acts. Than this will be given my—rights if I have to go to jail or give up my life.

After receiving this letter, King contacted the White Plains Police Department. A detective visited King and placed the Oct. 23 letter in a plastic bag, but no legal action was taken at this time.

Later that year, King received another letter from the Plaintiff, dated Nov. 21 and accompanied by yet another personal check, this time for $50, payable to King. This letter concluded with the following language:

> Again I commit the only act that I can do to get you to respond. If I don't get an answer soon. I will continue to give you the same curticy that Mr. Treutle Gave me.
>
> Under Durress
>
> Daniel J. Dorn

After receiving this letter, King again contacted the White Plains Police, which assigned Defendant Maffei to the case. Shortly thereafter, King received a third letter addressed to her, dated November 30, 2000, which was accompanied by another personal check for $50. The letter indicated that Plaintiff intended to refer the matter to the District Attorney and the criminal justice system. In this letter, Plaintiff also stated the following:

> I have explained to you that I am in a desperate situation and when I can get work I am working under duress and under fear.... The only way I can get you to do this is by committing this act of desperation, I need an answer from you. As to what you intend to do, my time is running out.

On December 13, 2000, Maffei met with King, who signed a statement describing the letters that Plaintiff had sent to her, and the resultant fears she claims to have had for her safety. After his discussions with King, and after reviewing the letters, Maffei signed a Misdemeanor Information, charging Plaintiff with Aggravated Harassment in the Second Degree. An Order of Protection against him and in favor of King was also issued.

On January 3, 2001, Plaintiff was arrested at his home in Poughkeepsie, New York. According to Plaintiff, he was held in custody for three days before being released on bail, which was posted by his sister. Further, Plaintiff testified that he was humiliated, intimidated and threatened by police officers, who briefly chained him to a pole and forced him to remove his clothing in front of a female officer.

Plaintiff's counsel moved to dismiss the Information and, in a Decision dated March 16, 2001, Hon. JoAnn Friia, White Plains City Court Judge, granted the motion. Judge Friia found, in pertinent part, that the statements in the Plaintiff's let-

ters "lack[ed] specificity of threat or clarity of intent" and "fail[ed] to create a genuine urgency of expectation"—a conclusion that was "well supported in view of the passage of time between receipt of the letter and the filing of the complaint."

In March 2002, Plaintiff filed this action.

## B. Procedural History:

The Plaintiff brought this action alleging violations of 42 U.S.C. § 1983 and various causes of action arising under New York state law, including malicious prosecution and intentional and negligent infliction of emotional distress.

Specifically, Plaintiff claims that the Defendants deprived him of his civil rights including his rights to speech, property, and due process of law under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by, *inter alia*, arresting, incarcerating and maliciously prosecuting Plaintiff, without probable cause to believe that he had committed a crime and with knowledge that he in fact did not commit any crime. Plaintiff claims that Defendants presented knowingly false and perjured statements and testimony in the accusatory instrument that formed the basis of Plaintiff's malicious prosecution and, in the process, subjected him to intentional and negligent infliction of emotional distress.

In March 2004, Defendants Maffei and the City filed a motion for summary judgment on all of Plaintiff's claims and for a determination that Maffei, individually and as a City of White Plains police officer, is entitled to qualified immunity.

In August 2004, Defendant King also filed a motion for summary judgment on all of Plaintiff's claims, and for a determination that she too is entitled to qualified immunity.

## II. Analysis

### A. Standard of review:

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### B. § 1983 Claim For Deprivation of Constitutional Rights And Conspiracy

■ "In order to seek redress through § 1983 ..., a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Therefore, to establish a constitutional violation under § 1983, plaintiffs must demonstrate that (1) defendants were acting under color of state law at the time of the alleged malicious prosecution; and (2) the action was a deprivation of a constitutional or federal statutory right. *Hayut v. State Univ. of New York*, 352 F.3d 733, 743–44 (2d Cir. 2003).

■ Section 1983 claims for malicious prosecution and false arrest incorporate the elements of those torts under the relevant state law. *See, e.g., Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir.2002) (malicious prosecution); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (false arrest). To establish a claim for malicious prosecution under New York law, the plaintiff must demonstrate "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed,

(4) that ends in failure or, in other words, terminates in favor of the plaintiff." *O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir.1996) (citations omitted). Probable cause is an absolute defense to false arrest, *see Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995), and defeats a claim for malicious prosecution, *see Fulton,* 289 F.3d at 195 (2d Cir.2002).

■ Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant,* 101 F.3d at 852.

■ As mentioned, the Plaintiff was charged with Aggravated Harassment in the Second Degree. Under New York Penal law, a person is guilty of that offense "when, with intent to harass, annoy, threaten or alarm another person, he or she...communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm...." N.Y. CLS PENAL § 240.30. Defendants Maffei and the City argue that there was probable cause to arrest the Plaintiff, and that Plaintiff's § 1983 claims must therefore be dismissed. This court agrees.

At the time of Plaintiff's arrest, Maffei had received a statement from King and, of course, had reviewed Plaintiff's letters, including the October 2000 letter in which the Plaintiff indicated that he was willing to do "anything" including much more "serious acts" to achieve outcomes that were favorable to him. This evidence was, without question, much more than sufficient to establish probable cause to arrest the Plaintiff in this case.

Plaintiff argues, in response, that the dismissal of the charges precludes this court from finding that there was probable cause to arrest the Plaintiff. Specifically, Plaintiff contends that a necessary implication of Judge Friia's finding that the Plaintiff's communications lacked "specificity of threat" and "urgency of expectation" is a finding that no reasonable person could find that there was probable cause to arrest Plaintiff for Aggravated Harassment in the Second Degree. This argument is not persuasive. The legal standard for probable cause is, of course, entirely distinct from that applied by a judge in adjudicating a motion to dismiss. If Plaintiff was correct, the dismissal of criminal charges would automatically render the prior arrest of the defendant illegal. This cannot be the case.[1]

■ Plaintiff also argues that, even if the dismissal of the charge against Plaintiff does not preclude a finding of probable cause, there nevertheless is inadequate evidence in the record to grant summary judgment for the Defendants on this issue. As discussed above, the court disagrees. In light of King's statement, the series of letters, and the attached checks, no reasonable jury could find that there was an absence of probable cause to arrest the Plaintiff for harassment.[2]

---

1. Plaintiff cites *Weyant* for the proposition that evidence of subsequent dismissal, acquittal or reversal is admissible to refute probable cause. *See* 101 F.3d at 852. But the fact that a subsequent dismissal is merely *evidence* of the absence of probable cause to arrest itself implies that dismissal does not, by itself, preclude the possibility that there was probable cause.

2. Because Plaintiff's § 1983 claim appears to have been framed as a conspiracy to deprive him of his constitutional rights, it is worth mentioning that, not only has Plaintiff failed to offer any evidence of a constitutional injury, he has also failed to offer any evidence to indicate that there was a conspiracy in this case. To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor

█ Therefore, Plaintiff's § 1983 claim must be dismissed.[3]

## C. Malicious Prosecution Claim

█ As discussed, in order to establish a claim for malicious prosecution, the plaintiff must demonstrate: (1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff. *See O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir.1996) (citations omitted). For multiple reasons, this claim must be dismissed.

First, this court's finding that there was probable cause to arrest Plaintiff precludes a claim for malicious prosecution in this case.

Second, there is no evidence in the record to suggest that the criminal proceedings against Plaintiff were begun with malice. The evidence indicates that Maffei met King for the first time in November, 2000, when he was assigned to investigate Dorn's conduct, and that Maffei met Dorn for the first time while arresting him. Plaintiff has pointed to no evidence of malicious intent.

█ Third, there can be no malicious prosecution claim against Defendant King, because she did not arrest Plaintiff and, therefore, did not initiate the criminal proceedings against him. As Plaintiff concedes, reporting a crime to law enforcement and giving testimony does not constitute the "initiation" of a criminal prosecution. *See Rohman v. New York City Transit Auth.,* 215 F.3d 208, 217 (2d Cir.2000).

█ That said, defendants who are not law enforcement officers may be found to have initiated criminal proceedings where they have played an "active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* In this case, Plaintiff claims that King played such a role. Specifically, Plaintiff contends that King initiated the criminal proceedings by actively seeking the help and intervention of Captain Viviano of the White Plains Police Department, who Plaintiff claims was King's political ally. But these allegations, even if true, do nothing to suggest that King did anything more than report potentially criminal conduct.[4] In addition, there is no evidence that King gave any false information or statements to anyone in-

and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Plaintiff has offered no evidence of any agreement between the Defendants in this case and, although Plaintiff claims that he can establish a conspiracy through circumstantial evidence, the court finds no such evidence in the record.

3. To the extent Plaintiff is also asserting a § 1983 claim for First Amendment retaliation, it should also be dismissed. A claim for retaliation cannot be sustained "when the criminal prosecution was supported by probable cause." *Mozzochi v. Borden,* 959 F.2d 1174, 1179–80 (2d Cir.1992) ("An individual does not have the right under the First

Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government."). *See also Singer v. Fulton County Sheriff,* 63 F.3d 110, 120 (2d Cir.1995) (upholding dismissal of First Amendment retaliation claim: "if the officer ... had probable cause ... then we will not examine the officer's underlying motive in arresting and charging the plaintiff."), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996).

4. Plaintiff also argues that King initiated the prosecution by falsely portraying the tone and content of Dorn's letters when describing them to the police. First, there is no evidence that this is true and, in any event, the record indicates that Maffei reviewed the letters himself.

volved in drafting the criminal complaint against the Plaintiff.

For these reasons, Plaintiff's malicious prosecution claims must be dismissed as against all Defendants.

## D. Claims For Intentional And Negligent Infliction Of Emotional Distress

 The state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996) citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993). Similarly, to state a claim for negligent infliction of emotional distress, plaintiffs must allege conduct that "was so outrageous and extreme as to support a claim for emotional distress," which is the same standard used in intentional infliction of emotional distress cases. *Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 730 N.Y.S.2d 272, 279 (1st Dep't 2001).

For reasons stated above, Plaintiff has failed to offer any evidence that Defendants' actions were unreasonable, let alone outrageous and extreme. As such, Plaintiff's claims for intentional and negligent infliction of emotional distress must also be dismissed.[5]

## E. Qualified Immunity For Defendants King And Maffei

### 1. Defendant King

 Even assuming, *arguendo*, that any of Plaintiff's claims should survive, Defendant King is entitled to qualified immunity in this case. To establish qualified immunity in § 1983 claims, a defendant must show "either '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir.2001) (quoting *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996)).

For reasons already discussed, the court finds that King's conduct was not violative of clearly established law. Moreover, even assuming her conduct was contrary to law, it was, without question, objectively reasonable for her to believe that her conduct was proper. Therefore, Defendant King is entitled to qualified immunity.

### 2. Defendant Maffei

 An arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *See Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987).

Even assuming, *arguendo*, that Defendants are not entitled to summary judg-

---

**5.** In addition, a substantial body of case law suggests that claims for intentional (and presumably also negligent) infliction of emotional distress must be dismissed where, as here, the conduct for the underlying claim may be redressed by way of traditional tort remedies such as battery, false arrest, and malicious prosecution. *See e.g., Thomas v. County of* *Putnam*, 262 F.Supp.2d 241, 251 (S.D.N.Y. 2003). Moreover, negligence claims cannot coexist with claims for intentional torts such as intentional infliction of emotional distress. *See United National Insurance Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir.1993) (recognizing "the mutual exclusivity of negligence and battery").

ment on the issue of whether there was probable cause to arrest Plaintiff, the court finds that no jury could reasonably find that it was objectively unreasonable for Maffei to believe that probable cause existed in this case. Therefore, Maffei is also entitled to qualified immunity.

### F. Whether The City Can Be Held Liable Under § 1983

█ Under § 1983, a municipality cannot be held liable solely on a theory of *respondeat superior, see Monell v. Department of Social Services,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and therefore the plaintiff must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

In this case, there is no evidence that any of the relevant conduct in this case was the result of any custom or practice by the City of White Plains. Plaintiff argues that the City may be held liable because Captain Viviano "chose and endorsed the unconstitutional course of action that resulted in the deprivation of Plaintiff's rights." But even assuming, without deciding, that the City could be held responsible for Viviano's conduct, the court finds no evidence to support Plaintiff's theory of Viviano's involvement in this case.

Therefore, the City may not be held liable under § 1983 in this case.

### III. Conclusion

For these reasons,

Defendant King's motion for summary judgment is GRANTED.

Defendants Maffei and City's motion for summary judgment is GRANTED.

The clerk of the court is directed to CLOSE this case.

It is so ordered.