Lamont SMITH and Lisa Smith, Plaintiffs,

v.

THE CITY OF NEW YORK, and Detective Frankie Rosado, Defendants.

No. 03 Civ.3048 WHP.

United States District Court, S.D. New York.

Jan. 11, 2005.

Wale Mosaku, Office of Wale Mosaku, P.C., Brooklyn, New York, for Plaintiff.

Seth D. Eichenholtz, Corporation Counsel of the City of New York, New York, New York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, District Judge.

This federal civil rights action involves claims by Lamont Smith for false arrest, false imprisonment, malicious prosecution, and deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights. Plaintiff Lisa Smith asserts a claim for loss of consortium under New York law as a result of the arrest and criminal proceeding against her husband, Lamont Smith. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiffs move for sanctions against defendants for their failure to preserve certain documents relevant to this action. For the following reasons, defendants' motion for summary judgment is granted and plaintiffs' motion for sanctions is denied.

*BACKGROUND*

On August 4, 2001, Lamont Smith was arrested and charged with the rape of a seventeen year-old female acquaintance identified as "D.G." (Defendants' Statement Pursuant to Rule 56.1 ("Defs. 56.1 Stmt.") ¶¶ 11, 33–34; Deposition of Frankie Rosado, dated January 14, 2004 ("Rosado Dep.") at 55; Declaration of Seth D. Eichenholtz, dated March 12, 2004 ("Eichenholtz Decl.") Ex. D; Deposition of Lamont Smith, dated November 19, 2003 ("Smith Dep.") at 41.) While driving his van the prior evening, Smith picked D.G. up and then left her on a street in Mount Vernon early in the morning of August 4, 2001. (Smith Dep. at 41, 58–59; Affidavit of Lamont Smith, dated April 5, 2004 ("Smith Aff.") ¶¶ 1–19; Eichenholtz Decl. Ex. F.)[2] D.G ran to a nearby house for assistance. (Eichenholtz Decl. Ex. F.) The Mount Vernon police interviewed D.G. and transported her to the Emergency Room at Montefiore Medical Center (the "Hospital"). (Eichenholtz Decl. Ex. F.)

Hospital staff notified the New York City Police Department. New York City Police officer Rosado was assigned to investigate D.G.'s complaint. (Rosado Dep.

1. Lamont Smith asserts his state law and Section 1983 claims for false arrest, false imprisonment and malicious prosecution against Rosado in his individual capacity. Smith's state law claims against the City are based on its alleged vicarious liability for Rosado's actions. All Section 1983, or *Monell*, claims against the City—and against Rosado in his official capacity—are predicated on its alleged "policy or custom" to violate federal law. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (to hold municipality liable as a "person" under § 1983, plaintiffs must show that a policy or practice of that entity caused the deprivation of their federal rights); *Brown v. City of Oneonta, New York*, 235 F.3d 769, 790 (2d. Cir.2000) (Section 1983 claims against government officials in their official capacities, or against municipal entities, must show that the entity's "policy or custom ... played a part in the violation of federal law") (internal quotations omitted).

2. Plaintiffs object to defendants' Exhibit F, the arrest sheet completed by Rosado on Au-

gust 4, 2001, on the ground that it contains inadmissible hearsay. (Plaintiff's Statement Pursuant to Rule 56.1 ("Pls. 56.1 Stmt.") ¶ 8.) This objection is without merit, however, since the exhibit is not being offered to show the truth of the matter asserted (i.e., that D.G. was raped) but, rather, to demonstrate that the statements contained therein were relayed to police personnel including defendant Frankie Rosado. Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). It is well established, though, that statements offered for their effect on the listener are non-hearsay. *See United States v. Garcia*, 900 F.2d 571, 576 (2d Cir. 1990) (holding that statements were properly admitted as non-hearsay to provide context in which drug transaction occurred); *see also United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir.1991).

at 29.) Rosado spoke with other police personnel at the Hospital, who informed him of what they had learned from the Mount Vernon police. (Rosado Dep. at 29, 31–32.) Rosado also spoke with D.G. and then went to D.G.'s home in an attempt to locate her mother. (Rosado Dep. at 30–31.)

Meanwhile, Smith went to D.G.'s home, picked up D.G.'s mother and took her to the Hospital. (Smith Dep. at 67, 70.) When they arrived, Hospital security guards prevented Smith from leaving and notified Rosado. (Rosado Dep. at 42, 83; Smith Dep. at 73–74.) Rosado returned to the Hospital where other police personnel informed him that Smith had been apprehended by security staff as he attempted to leave. (Eichenholtz Decl. Ex. B.)[3] Rosado then spoke with D.G., who was crying and appeared to be upset. (Rosado Dep. at 44.) D.G. described the rape to Rosado and identified Smith as the perpetrator. (Rosado Dep. at 45–46, 48–49.) The Hospital's treating doctor advised Rosado that he had not observed any physical injuries on D.G. and that a "rape kit" was being prepared. (Rosado Dep. at 50–51.) At the time, Rosado observed that it was odd for a rape suspect to accompany the victim's mother to the Hospital and that he personally believed Smith's claim of innocence. (Deposition of Loretta McCoy, dated February 17, 2004 ("McCoy Dep.") at 28–29.) Thereafter, Rosado arrested Smith. (Rosado Dep. at 55–56.)

Rosado swore out a criminal complaint at the Bronx District Attorney's Office. (Eichenholtz Decl. Ex. B.) Smith was arraigned on August 5, 2001, and released on August 10, 2001. (Smith Aff. ¶¶ 40–41.)

Assistant District Attorney Rachel Singer interviewed D.G. several days after the alleged attack and concluded she was credible. However, the rape kit yielded no physical evidence. (Singer Dep. at 90–91, 93, 140, 142, 148.) A.D.A. Singer did not put D.G. into the grand jury because D.G. was too distraught by an unrelated family crisis. (Singer Dep. at 75–76, 123–26, 131, 139, 141, 148, 154.) On May 1, 2002, the rape charge was dismissed for failure to comply with New York's speedy trial rules, N.Y. C.P.L. § 30.20 (McKinney 2003). (Eichenholtz Decl. Ex. I. at 3; Singer Dep. at 117–18.)

On July 22, 2002, plaintiffs filed a notice of claim against the City of New York and commenced this action on April 30, 2003.

### DISCUSSION

#### I. Defendants' Motion for Summary Judgment

##### A. Summary Judgment Standard

Courts may grant summary judgment only if "there is no genuine issue as to any material fact" and "the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997). Once the movant satisfies this requirement, the burden shifts to the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477

---

**3.** Plaintiffs object to defendants' Exhibit B, the follow-up report filled out by Rosado on August 4, 2001, on the basis that it contains inadmissible hearsay. (Pls. 56.1 Stmt. ¶ 5.) Again, however, this Exhibit is not being of-fered to show the truth of the matter asserted therein—namely, that Smith was the perpetrator—but, instead, to show its effect on Rosado. *See Garcia, Puzzo*, 928 F.2d at 1365, 900 F.2d at 576; *supra* at n. 2.

U.S. at 322, 106 S.Ct. 2548. The court is required to resolve any ambiguities and to make all reasonable inferences in favor of the non-moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir.2001). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *False Arrest and False Imprisonment*

■ The elements of a false arrest or false imprisonment claim are similar under New York law and Section 1983 based on the Fourth Amendment right to be free of unreasonable searches and seizures. *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir.1992); *Dukes v. City of New York*, 879 F.Supp. 335, 340 (S.D.N.Y.1995); *see also Brome v. City of New York*, No. 02 Civ. 7184(WHP), 2004 WL 502645, at *3 (S.D.N.Y. Mar.15, 2004) (false arrest and false imprisonment claims are synonymous under New York law). To establish a false arrest claim, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994); *Dukes*, 879 F.Supp. at 340.

■ Defendants maintain that plaintiffs' state law false arrest and false imprisonment claims are time-barred. Under New York law, a notice of claim is a necessary precondition to bringing a tort claim against a municipality or its officers. *See* N.Y. Gen. Mun. Law §§ 50–e, 50(1)(a). A plaintiff must file his notice of claim within ninety days after the claim arises and commence the action within one year and ninety days from the date the cause of action accrues. *See* N.Y. Gen. Mun. Law §§ 50–

e, 50(1)(a). The "failure to comply with provisions requiring notice of claims prior to the commencement of litigation ordinarily requires dismissal." *Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 61–62, 484 N.Y.S.2d 533, 473 N.E.2d 761 (1984); *see also Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("[I]n a federal court, state notice-of-claim statutes apply to state-law claims.").

■ Smith was arrested on August 4, 2001 and released from custody on August 10, 2001. (Rosado Dep. at 55–56; Smith Aff. ¶¶ 40–41.) Smith's false arrest/false imprisonment claim accrued on August 10, 2001, when he was released from custody. *See Geressy v. Digital Equip. Corp.*, 980 F.Supp. 640, 652 (E.D.N.Y.1997). Plaintiffs did not file their notice of claim until July 22, 2002 (Affirmation of Wale Mosaku, dated April 5, 2004 ("Mosaku Aff.") Ex. 1), and did not commence this action until April 30, 2003. Accordingly, defendants are entitled to summary judgment as to Smith's state law false arrest and false imprisonment claims because they are untimely under N.Y. Gen. Mun. Law §§ 50– e, 50(1)(a).

■ Rosado contends that he is entitled to summary judgment on Smith's Section 1983 false arrest claim against him in his individual capacity because he had probable cause to apprehend Smith. Probable cause constitutes a complete defense to a claim for false arrest. *Bernard*, 25 F.3d at 102. Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)). The probable cause inquiry is an objective one. *Dukes*,

879 F.Supp. at 340. Accordingly, "[p]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard,* 25 F.3d at 102–03.

Here, Rosado had probable cause to arrest Smith at the Hospital on August 4, 2001 based on D.G.'s in-person identification of Smith and her description of the alleged rape. (Rosado Dep. at 29, 31–32, 45–46, 48–49.) "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000) (citation and internal quotations omitted); *Donovan v. Briggs,* 250 F.Supp.2d 242, 251–52 (W.D.N.Y.2003) ("Both New York State and federal courts have held that a purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest.") (citing cases); *Dukes,* 879 F.Supp. at 340 ("[I]n-person identifications by a witness are sufficient to make out probable cause for arrest."); *Orminski v. Vill. of Lake Placid,* 268 A.D.2d 780, 781, 702 N.Y.S.2d 181, 183 3d Dep't 2000) ("[I]nformation provided by an identified citizen accusing another individual of the commission of a specific crime is sufficient to provide the police with probable cause to arrest.") (citation and internal quotations omitted). Rosado was entitled to rely on D.G.'s identification of Smith as the basis for his arrest because " 'the veracity of citizen complaints who are the victims of the very crimes they report to the police is assumed.' " *Obilo v. City Univ. of the City of New York,* No. Civ. 01–5118(DGT), 2003 WL 1809471, at *7 (E.D.N.Y. Apr.7, 2003) (quoting *Miloslavsky v. AES Eng'g Soc'y., Inc.,* 808 F.Supp. 351, 355 (S.D.N.Y.1992)).

Apart from D.G.'s identification of Smith and her description of the alleged assault, Rosado relied on information from other police personnel concerning the events of August 3–4, 2001. (Rosado Dep. at 29, 31–32; Eichenholtz Decl. Ex. F.) That information constituted further probable cause under the collective knowledge doctrine. *See United States v. Colon,* 250 F.3d 130, 135 (2d Cir.2001) ("[A]n arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation."); *United States v. Lavallee,* 517 F.2d 750, 753 (2d Cir.1975) ("The [probable cause] assessment by the courts is to be made on the basis of the collective knowledge of the police rather than on that of the arresting officer alone.")

Plaintiffs argue that Rosado lacked probable cause because the doctors who examined D.G. did not find any physical evidence that she had been raped. (Rosado Dep. at 51.) Plaintiffs note, moreover, that Rosado knew Smith had accompanied D.G.'s mother to the Hospital and stated that he believed Smith's claim of innocence. (McCoy Dep. at 28–29; Rosado Dep. at 59.) These arguments are without merit because it is well established that "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury." *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989); *United States v. Webb,* 623 F.2d 758, 761 (2d Cir.1980) ("[F]acts ostensibly sufficient to establish probable cause for an arrest are not negated simply because such facts also may be consistent with the suspect's innocence."); *Dukes,* 879 F.Supp. at 343 ("Police officers need not conduct an investigation which

exculpates an arrestee."). Moreover, Rosado's subjective belief as to Smith's innocence does not undermine the objective factors on which Rosado relied in making the arrest. *See United States v. $557, 933.89, More or Less, in United States Funds*, 287 F.3d 66, 85 (2d Cir.2002) ("[T]he determination of probable cause is an objective one, to be made without regard to the individual officer's subjective motives or belief as to the existence of probable cause."). Accordingly, it would have been improper, and unnecessary, for Rosado to probe the veracity of D.G.'s allegations given her identification of Smith and the other police officers' descriptions of the events of August 3, 2001.

■ Additionally, even if defendants were unable to demonstrate actual probable cause, Rosado is entitled to qualified immunity from suit in his individual capacity under Section 1983. Rosado's objectively reasonable belief that the totality of the circumstances warranted Smith's arrest gives rise to qualified immunity. *See Thomas v. County of Putnam*, 262 F.Supp.2d 241, 247 (S.D.N.Y.2003) ("A police officer is entitled to qualified immunity as a matter of law if the evidence shows 'either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met.'") (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987)); *see also Orminski*, 268 A.D.2d at 781, 702 N.Y.S.2d at 182 (officer had probable cause to arrest alleged culprit where "the complainant reported the alleged crime within hours of its occurrence, endured a rape kit examination at the local hospital and presented herself in such a way that [the arresting officer] believed her accusations to be true").

This Court holds, therefore, that Rosado is entitled to summary judgment as to plaintiffs' Section 1983 claims for false arrest and false imprisonment based on probable cause and qualified immunity.

C. *Malicious Prosecution*

■ Claims for malicious prosecution are similar under New York law and Section 1983. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir.2003). To establish a claim for malicious prosecution, a plaintiff must show that: (1) the defendant initiated and continued a criminal proceeding against him; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for that proceeding; and (4) the defendant commenced the criminal proceeding with malice. *See O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir.1996).

■ Plaintiffs have adduced no evidence to satisfy the third and fourth elements of their malicious prosecution claim. As discussed, Rosado had probable cause for Smith's arrest. Probable cause to arrest is a defense to a malicious prosecution claim unless, after the arrest, additional facts come to light that vitiate the probable cause. *See Dukes*, 879 F.Supp. at 342 (citing *Oakley v. Rochester*, 71 A.D.2d 15, 19, 421 N.Y.S.2d 472, 474–75 (4th Dep't 1979)). There is no evidence that Rosado was involved with the criminal proceeding against Smith after he signed the affidavit for the criminal complaint on August 4, 2001. (Eichenholtz Decl. Ex. B.) Plaintiffs have proffered no facts showing that Rosado learned of information before he signed the affidavit that undermined the probable cause for Smith's arrest. Accordingly, Rosado's probable cause to arrest Smith is a complete defense to the malicious prosecution claim. *See Thomas*, 262 F.Supp.2d at 251 (finding of probable cause to arrest compelled dismissal of malicious prosecution claim); *Dukes*, 879 F.Supp. at 342.

Further, there are no facts indicating that it was unreasonable for Rosado to believe probable cause existed when his involvement in the proceeding ceased on August 4, 2001. Although the doctors who treated D.G. found no physical evidence of rape (Rosado Dep. at 51), it was reasonable for Rosado to rely on her identification of Smith and the other officer's descriptions of what purportedly had occurred. *See Colon,* 250 F.3d at 135 (imputed knowledge doctrine); *Martinez,* 202 F.3d at 634 (in-person identification constitutes sufficient probable cause to arrest). Rosado is thus entitled to qualified immunity from the malicious prosecution claim. *See Rogers v. City of Amsterdam,* 303 F.3d 155, 159 (2d Cir.2002) (defendant police officer entitled to qualified immunity from malicious prosecution claim where reasonable officers could disagree over whether there was probable cause to arrest and "nothing occurred between the arrest and prosecution to alter this"); *Rohman v. New York City Transit Auth.,* 215 F.3d 208, 217–18 (2d Cir.2000) (official entitled to qualified immunity from malicious prosecution since "[t]here [was] no evidence ... suggesting that after [defendant] completed his report to the police ... he did anything further with respect to [plaintiff's] arrest or prosecution").

 Summary judgment must also be granted as to the state law malicious prosecution claim against the City. Plaintiffs have submitted no evidence suggesting that the Bronx District Attorney commenced and continued the proceeding with malice, that is, a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir.1996). To the contrary, A.D.A. Singer testified that she believed D.G.'s allegations and found her to be a credible witness. (Singer Dep. at 140, 142, 148.)

Plaintiffs' conclusory assertion that "the prosecution was commenced and continued for an improper motive" (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls.Mem.") at 16), is insufficient to withstand summary judgment. *See Kuriakose v. City of Mount Vernon,* 41 F.Supp.2d 460, 467 (S.D.N.Y.1999) (granting summary judgment on malicious prosecution claim where "plaintiff offer[ed] only conclusory allegations" to show criminal proceeding was initiated with malice); *see also Donovan,* 250 F.Supp.2d at 261 (granting summary judgment on issue of malice where there was "no evidence that [defendant] had any personal animus toward plaintiff, or that he acted with a reckless or grossly negligent disregard of the plaintiff's rights.") (citation and internal quotations omitted).

For the foregoing reasons, defendants' motion for summary judgment as to the claim of malicious prosecution is granted.

Because defendants are entitled to summary judgment as to plaintiffs' false arrest and malicious prosecution claims, Lisa Smith's derivative claim for loss of consortium also must be dismissed. *See Saghezi v. Reno,* No. 94 Civ. 8291(HB), 1996 WL 524338, at *10 (S.D.N.Y. Sept.16, 1996) ("Because both loss of consortium claims are derivative claims, if plaintiff's claims for false arrest and imprisonment fail, the loss of consortium claims also fail."); *Jenkins v. City of New York,* No. 91 Civ. 3639(RLC), 1992 WL 147647, at *9 (S.D.N.Y. June 15, 1992) ("Since loss of consortium is a derivative claim, it can only survive if one of [plaintiff's] spouse's claims is viable.").

D. *The City's Liability Under Section 1983*

 To hold a municipality liable pursuant to Section 1983 for the conduct of

employees below the policymaking level, a plaintiff must demonstrate that the violation of his constitutional rights resulted from the municipality's custom or policy. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (failure to train may serve as the basis for Section 1983 liability "where the failure to train amounts to deliberate indifference").[4] Such a policy or custom may be inferred from "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Ricciuti v. New York Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). However, the mere assertion that such a policy exists "is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983)).

▬▬▬ Defendants' motion for summary judgment must be granted because the record is bereft of anything other than a single incident—namely, Smith's arrest and the commencement of proceedings against him. (Eichenholtz Decl. Ex. I. at 3; Rosado Dep. at 55–56; Singer Dep. at 117–18; Smith Aff. ¶¶ 40–41.) "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *cf. Powe v. City of Chicago*, 664 F.2d 639, 651 (7th Cir.1981) ("[A] pattern of conduct or a series of acts violative of constitutional

rights will in many cases raise an inference of a municipal policy").

Moreover, plaintiffs have adduced no evidence of inadequacies in the City's training of its police and assistant district attorneys. Nor have plaintiffs come forward with facts demonstrating a nexus between any purported inadequacies and the alleged constitutional violations. Plaintiffs' failure to proffer specific facts showing the City's failure to train its employees or anything more than a single incident is fatal to their *Monell* claims. *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n. 10 (2d Cir.2004) ("After discovery . . . a plaintiff is expected to proffer evidence from which a reasonable factfinder could conclude that [defendant's] training program was actually inadequate, and that the inadequacy was closely related to the violation."); *Ricciuti*, 941 F.2d at 123 ("[A] single incident . . . especially if it involved actors below the policy-making level, does not suffice to show a municipal policy.").

Accordingly, the City's motion for summary judgment is granted as to plaintiffs' Section 1983 claims for false arrest, malicious prosecution, and deprivation of Lamont Smith's Fifth, Sixth and Fourteenth Amendment rights.

## II. *Plaintiffs' Motion for Sanctions*

Plaintiffs move for sanctions based on Rosado's alleged failure to locate certain notes that he may have taken on August 4, 2001 before the arrest, and the Bronx District Attorney's Office's failure to locate its file on Smith.

▬▬▬ Courts have authority to sanction the loss or destruction of evidence pursuant to Rule 37(b) and their inherent

---

4. Smith's § 1983 claims against Rosado in his official capacity are analytically indistinct from his § 1983 claims against the City. *See*

*Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

power. *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y.1991). A party to litigation has an obligation to retain evidence that it knows, or should know, may be relevant to actual or foreseeable litigation. *See Barsoum v. New York City Hous. Auth.*, 202 F.R.D. 396, 400 (S.D.N.Y.2001). For sanctions to be imposed, a party must establish that: (1) the party with control over the evidence had a duty to preserve it when it was lost or destroyed; (2) the evidence was lost or destroyed with a "culpable state of mind"; and (3) the evidence was relevant. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.2002). Sanctions may be imposed for both intentional and negligent destruction of evidence. *See Ramirez v. Avery Berkel, Inc.*, 2004 U.S. Dist. LEXIS 4510, at *30 (S.D.N.Y. Mar. 16, 2004).

■ "In determining whether a court should exercise its authority to impose sanctions for spoliation, a threshold question is whether a party had any obligation to preserve the evidence." *Turner*, 142 F.R.D. at 72. The obligation to preserve evidence may arise through a discovery request, through information alleged in the complaint, or prior to the initiation of litigation where a party is on notice that legal proceedings are likely. *Turner*, 142 F.R.D. at 73; *Capellupo v. FMC Corp.*, 126 F.R.D. 545 (D.Minn.1989); *Alliance to End Repression v. Rochford*, 75 F.R.D. 438 (N.D.Ill.1976)). There must be a factual basis for a party to be on notice that litigation is likely to be commenced. *See Capellupo*, 126 F.R.D. at 549–50 (finding defendant on notice of potential class action at the time of document destruction based on entries evincing such knowledge in general counsel's calendar); *Alliance to End Repression*, 75 F.R.D. at 440 (same finding based on reports, of which defen-

dant was aware, that plaintiffs were about to file suit).

■ Here, there is no evidence that Rosado actually misplaced any notes he took on August 4, 2001. Rosado stated that he may have taken some personal notes when he spoke with Smith, but does not recall doing so. (Mosaku Aff. Ex. 26 (Affidavit of Frankie Rosado, dated February 25, 2004, ¶¶ 3–4).) Accordingly, plaintiffs' motion as to Rosado is wholly speculative.

Moreover, there is no evidence that defendants were under an obligation to retain the files at the time they were allegedly misplaced. Plaintiffs bear the burden of establishing all elements of their claim for spoliation of evidence. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir.2001). Even if defendants misplaced those documents, plaintiffs offer no evidence that defendants did so after the notice of claim was filed. *See Turner*, 142 F.R.D. at 73. Because plaintiffs cannot show that defendants were under an obligation to preserve the files at issue at the time they were purportedly misplaced, their motion for sanctions is denied. *See Byrnie*, 243 F.3d at 109 ("Where one seeks an adverse inference regarding the content of destroyed evidence, one must first show that the party having control over the evidence ... had an obligation to preserve it at the time it was destroyed.") (internal quotations and citation omitted).

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted, and plaintiffs' motion for sanctions is denied. The Clerk of the Court is directed to mark this case closed.