### UNITED STATES OF AMERICA

v.

### John A. GOTTI, Defendant.

### No.  04 CR.  690(SAS).

United States District Court, S.D. New York.

Aug. 3, 2006.

---

**65.**  *See DiSomma,* 951 F.2d at 497.

Victor Hou, Miriam E. Rocah, Assistant United States Attorneys, New York, New York, for the Government.

Charles F. Carnesi, Garden City, New York, Seth Ginsberg, New York, New York, Sarita Kedia, New York, New York, for Defendant John A. Gotti.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

### I. INTRODUCTION

John A. Gotti ("Gotti") moves to admit certain portions of wiretap recordings, made pursuant to an order of the District Court of the Northern District of New York under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, during Gotti's incarceration at F.C.I. Raybrook ("Raybrook Recordings"), and to preclude introduction of other portions of those recordings by the Government.[1] The Government opposes Gotti's motion.[2] The parties ask the Court to address their disputes with regard to the admissibility of certain statements pertaining to three topics: *first,* Gotti's alleged witness tampering through his meeting with the son of cooperating witness Michael DiLeonardo in February 2003, *second,* Gotti's intentions with respect to his 1999 guilty plea,[3]

---

1. *See* 7/12/06 Letter from Charles Carnesi, Counsel to Gotti, to the Court ("7/12/06 Carnesi Letter"); 7/17/06 Letter from Carnesi to the Court ("7/17/06 Carnesi Letter"). The Raybrook Recordings are numbered chronologically into 85 "sessions" taped between March 2003 to May 2004.

2. *See* 7/14/06 Letter from Victor Hou and Miriam Rocah, Assistant United States Attor-

neys, to the Court ("7/14/06 Government Letter").

3. The background of Gotti's 1998 prosecution and 1999 guilty plea is described in this Court's Opinion and Order dated May 13, 2005. *See United States v. Gotti,* 399 F.Supp.2d 252, 254 (S.D.N.Y.2005).

and *third*, plea discussions between Gotti and the Government in 2003.[4]

## II. APPLICABLE LAW

### A. Hearsay

#### 1. Rule 803(3): State of Mind

Statements made by an out-of-court declarant and introduced to prove the truth of the matter asserted are generally inadmissible under the hearsay rule.[5] However, under Federal Rule of Evidence 801(c), "where a statement is offered as circumstantial evidence of the declarant's state of mind rather than for the truth of the matter asserted, it is not hearsay."[6] In addition, under Rule 803(3), the state of mind *exception* to the hearsay rule allows into evidence "[a] statement of the declarant's then existing state of mind ... but not including a statement of memory or belief to prove the fact remembered or believed."[7] "[A] determination of whether a statement falls within the state of mind exception requires a predicate finding as to whether the statement relates to a then existing state of mind or to a past memory or belief offered to prove the fact remembered or believed."[8] Additionally, "[i]t is

well established ... that statements offered for their effect on the listener are non-hearsay."[9]

#### 2. Rule 801(d)(2)(A): Party Admissions

Rule 801(d)(2) provides, in pertinent part, that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is (A) the party's own statement." A party's "own statements [are] admissible as non-hearsay admissions regardless of whether such statements were against his interest when made."[10]

### B. Rule 106: Doctrine of Completeness

Rule 106 of the Federal Rules of Evidence provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."[11] The Second Circuit has "interpreted Rule 106 to require that a document be admitted when it is essential to explain an al-

---

4. For background on Gotti's prosecution for violations of the Racketeer Influenced and Corrupt Organizations Act for his alleged role in the Gambino Organized Crime Family ("Gambino Family"), *see United States v. Gotti*, 413 F.Supp.2d 287, 289 (S.D.N.Y.2005).

5. *See* Fed.R.Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

6. *Smith v. Duncan*, 411 F.3d 340, 347 n. 4 (2d Cir.2005).

7. Fed.R.Evid. 803(3).

8. *United States v. Taubman*, 297 F.3d 161, 165 (2d Cir.2002).

9. *Smith v. City of New York*, 388 F.Supp.2d 179, 182 n. 2 (S.D.N.Y.2005) (citing *United*

*States v. Garcia*, 900 F.2d 571, 576 (2d Cir. 1990)).

10. *United States v. Shulman*, 624 F.2d 384, 390 (2d Cir.1980).

11. *Phoenix Associates III v. Stone*, 60 F.3d 95, 102 (2d Cir.1995) ("The common-law doctrine of completeness, on which Rule 106 is based, likewise requires that a full document or set of documents be introduced: '[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible.' ") (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)).

ready admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." [12] However, "Rule 106 does not compel admission of otherwise inadmissible hearsay evidence and documents generally are admitted under the Rule for the same purpose as the primary documents they explain." [13]

### C. Rule 410: Plea Discussions

Rule 410 of the Federal Rules of Evidence provides that evidence of "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" is not "admissible against the defendant who made the plea or was a participant in the plea discussions." "The underlying purpose of Rule 410 is to promote plea negotiations by permitting defendants to talk to prosecutors without sacrificing their ability to defend themselves if no disposition agreement is reached." [14] The Rule's limitations are "not to be read broadly" and "its protections are waivable." [15]

### D. Rule 403: Relevance

Rule 403 of the Federal Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## III. DISCUSSION

### A. Meeting with DiLeonardo's Son

The Government charges Gotti with witness tampering from in or about November 2002 through March 2003. This charge is based in part on Gotti's meeting with the son of cooperating witness Michael DiLeonardo in February 2003, which the Government alleges was intended to discourage DiLeonardo from cooperating. The Government seeks to admit portions of Sessions 19, 49, and 54 of the Raybrook Recordings, in which Gotti discusses his plan to meet with DiLeonardo's son, what was said at the meeting, and how the meeting angered DiLeonardo. [16] Gotti does not object to the Government's proposal to admit these statements. The parties dispute whether Gotti may introduce a portion of Session 20, taped on March 23, 2003, after the visit with DiLeonardo's son, in which Gotti and an associate, John Ruggiero, discuss DiLeonardo's attitude prior to the visit, and Ruggiero informs Gotti that DiLeonardo stated "first call my wife and see if she's okay." [17] Gotti argues that

12. *Id.* (citation and quotation marks omitted).

13. *Id.* (citation and quotation marks omitted).

14. *United States v. Barrow*, 400 F.3d 109, 116 (2d Cir.2005) (citing Fed.R.Evid. 410 Advisory Committee's Note (1972)).

15. *Id.* (citations and quotation marks omitted).

16. See 3/23/03 Tr. Sess. 19, at 1, Ex. B to 7/12/06 Carnesi Letter (Gotti asking whether there has been any word from DiLeonardo's son); 7/15/03 Tr. Sess. 32 or 37, at 11–12, Ex. C to 7/12/06 Carnesi Letter (discussing Gotti's meeting with DiLeonardo's son and what was said); 9/5/03 Tr. Sess. 49, at 2–3, Ex. D to 7/12/06 Carnesi Letter (Gotti discussing a letter he wrote to DiLeonardo's son and his reasons for writing it); 9/5/03 Tr. Sess. 54, at 6–7, Ex. E to 7/12/06 Carnesi Letter (Gotti discussing the visit and how it angered DiLeonardo).

17. *See* 3/23/03 Tr. Sess. 20, at 3, Ex. A to 7/12/06 Carnesi Letter (Gotti stating to Ruggiero "He's supposed to come see me for the past two years. . . . But Michael didn't want Noel [ui]." and Ruggiero stating "Exactly that he said, stay away from Noel. . . . He said, first call my wife and see if she's okay. And I

this segment suggests that he had permission from DiLeonardo for the meeting, and is admissible both as a present sense impression and under the rule of completeness. The Government argues that the statement is inadmissible hearsay—that Gotti seeks to present the jury with his and Ruggiero's after-the-fact version of events without testifying. The Government also argues that the rule of completeness does not require admission of this statement, or render admissible evidence that is otherwise inadmissible hearsay.[18]

■ Because Ruggiero's statement is not offered to prove the truth of the matter asserted with respect to DiLeonardo's attitude, it is not hearsay.[19] Ruggiero's statement is offered to show its effect on Gotti during the time period when Gotti is charged with witness tampering. The indictment alleges that the witness tampering consisted not only of the meeting with DiLeonardo's son, but continued "[f]rom in or about November 2002, up to and including in or about March 2003."[20] The disputed statement goes to Gotti's subjective understanding of DiLeonardo's attitude, an issue that is relevant to whether or not Gotti intended to engage in witness tampering. Moreover, Rule 106 does not allow the Government to cherry pick the statements it wants to admit on the issue of Gotti's meeting with DiLeonardo's son and create a skewed picture of the facts.

### B. 1999 Plea

Gotti seeks to introduce certain statements from Sessions 61 and 62 related to the reasons he accepted a plea agreement with the Government on April 5, 1999, specifically, his desire for "closure."[21] Gotti also seeks to admit statements from Session 56 regarding his opinion that he had paid all his debts, including the money owed to the Government, and desired to bring an end to certain activities.[22] Gotti argues that these statements reflect his then-existing state of mind to be finished with the life of organized crime. The Government responds that these statements are inadmissible hearsay, irrelevant to Gotti's withdrawal defense, and likely to confuse the jury with respect to whether the instant prosecution is barred by Gotti's 1999 plea agreement.[23]

---

did, I called her two or three times and I never got an answer.").

**18.** *See United States v. Guevara*, 277 F.3d 111, 127 (2d Cir.2001).

**19.** Obviously, Ruggiero's statement cannot be Gotti's present sense impression, as it is not his statement.

**20.** 5/22/06 Indictment, S3 04 Cr. 690 ("2006 Indictment") ¶ 25.

**21.** 12/19/03 Tr. Sess. 61 at 3, Ex. G to 7/12/06 Carnesi Letter (with respect to his April 5, 1999 plea agreement, Gotti states "any crime they claim I was committing or they thought I committed or they were investigating me for I'm supposed to have some sort of closure . . . That's why [ui]. We volunteered those charges;" and "I just want it over. I just want to know when I go to jail it's the end."); 12/19/03 Tr. Sess. 62 at 1, Ex. H to 7/12/06 Carnesi Letter (Gotti claims he took the plea and paid $ 3.13 million "for closure" and so "[i]t's all done").

**22.** *See* 9/5/03 Tr. Sess. 56 at 2, Ex. I to 7/12/06 Carnesi Letter (Gotti claims he "don't owe nobody a nickel" having paid "all my debts" and "taxes dollar for dollar" and stating that "I don't need people thinking that while I'm in jail that I'm beating them because people seem to figure they dumped this much on me so we'll dump this much more on him. They'll go see Johnny Boy [ui][ui] my nephew [ui] we're gonna send him a little something for Christmas five thousand, you know, that's how they do it. See that's how the weasels do it. And that's why you gotta, the bleeding has gotta stop some place. We gotta put an end to this.").

**23.** The Government also argues that Gotti's statements are self-serving, made at a time when he was aware of the wiretap, and offered for the truth of the matter asserted.

■ The Government is correct that the statements in question are not relevant to Gotti's withdrawal defense. The statements evince only Gotti's state of mind on *first*, whether the Government could prosecute him for certain conduct because of his plea agreement and *second*, that he had paid his "debt" to society. The statements regarding Gotti's desire for "closure" are with express reference to Gotti's 1998 prosecution, not his alleged racketeering activities. To the extent that these statements express Gotti's intent to withdraw from the charged conspiracy, they are cumulative, because the Government does not object to the introduction of numerous statements by Gotti with respect to his desire to sever ties with the Gambino Family.[24]

The Government is also correct that Gotti's statement with respect to his plea agreement that "any crime they claim I was committing or they thought I committed or they were investigating me for I'm supposed to have some sort of closure" could be misleading. I have already ruled that the plea agreement does not preclude

subsequent prosecution based on additional facts discovered by the Government, even facts discovered as a result of investigations pending at the time of that agreement.[25] Although a curative instruction to the jury could mitigate any potential confusion, there is no reason to run the risk of misleading the jury about the propriety of this prosecution in light of the fact that the evidence is both irrelevant and cumulative.

### C. 2003 Plea Discussions

The parties dispute whether the Government may introduce statements by defendant to his visitors Angel Gotti and Ruggiero on sessions 42, 49, and 53 regarding Gotti's desire to negotiate a plea agreement with the Government through his attorney, Jeffrey Lichtman, before any charges were brought in 2003.[26] Gotti is charged with conspiracy to kidnap and kidnaping of Curtis Sliwa. The disputed statements from Session 53 include Gotti's professed willingness to "cop out to this Sliwa thing" with the qualification that "I'm not saying I did it,"[27] and questions by Gotti regarding the strength of the

---

Gotti claims that he was not aware of the wiretap. I need not resolve the dispute over whether Gotti was aware of the wiretap, because I conclude, for the reasons set forth in this Opinion, that the statements are not admissible.

24. *See, e.g.,* 3/14/03 Tr. Sess. 11 at 1–2, Ex. to Ray Brook Wiretap Transcripts to Be Offered by John A. Gotti (Gotti professes desire to sever ties with associates and move to Canada).

25. *See Gotti,* 399 F.Supp.2d at 254 (1999 plea agreement did not bar subsequent prosecution because that agreement stated "[n]othing in this agreement . . . precludes indictment if any additional evidence or information whatsoever comes to the Offices' attention, including but not limited to as a result of any pending investigation.").

26. *See* 8/8/03 Tr. Sess. 42 at 4, Ex. N to 7/12/06 Carnesi Letter (stating to Angel Gotti that Gotti's attorney, Lichtman, was "trying

to work out my coverage and see where we . . . see where he ends up"); 9/5/03 Tr. Sess. 49 at 4, Ex. O to 7/12/06 Carnesi Letter (stating to Ruggiero, "Tell the judge. I'll take ten years supervised release . . . a couple more years on top of this and I'll cop out to the Sliwa thing tomorrow.").

27. 9/5/03 Tr. Sess. 53 at 3–4, Ex. M to 7/12/06 Carnesi Letter (stating to Ruggiero, "let's suppose that they want me to cop out to this Sliwa thing and they want to add another year or two to my sentence . . . I'll do it . . . I'm not saying I did it but I'll do it. I'll take the blame for everything;" Gotti also explains that he was pursuing a plea agreement because he thought he could "get much less time"; and expresses his opinions that "they didn't make the case yet" and that "they need more than Michael [DiLeonardo] and nobody pinned a[ui] on me in the last five years.").

Government's case against him.[28] The parties also dispute the admissibility of statements by Gotti on Session 58 of his desire to go to trial in lieu of a plea.[29] Gotti argues that if such statements are introduced, he should be allowed to present statements from Sessions 66, 67, and 75 in which he denies involvement with the Sliwa attack, denies knowing Michael Yanotti and Joseph D'Angelo, both of whom were suspected of participating in the Sliwa attack, comments on the Government's evidence regarding the Sliwa attack, and claims that the charges were invented to "tarnish [his] father's name."[30]

■ Gotti objects to the introduction of his statements regarding a potential plea on the ground that these statements are inadmissible hearsay. But the statements fall within the exception to the hearsay rule for party admissions. Although Gotti is correct that his statements contemplating a guilty plea are coupled with denials of actual culpability, an admission need not be incriminating to fall within the exception to the hearsay rule.[31] Rule 801(d)(2)(A) requires only that the statement be "offered against a party."[32] Gotti argues that an admission must be contrary to a position taken at trial to qualify under the exception of Rule 801(d)(2)(A). But Gotti cites no case excluding a statement on this basis.[33] Cases explaining that an admission must be contrary to a position taken by the party at trial do so to distinguish Rule 801(d)(2)(A) from the more lim-

**28.** *See* 9/5/03 Tr. Sess. 53 at 7, Ex. P to 7/12/06 Carnesi Letter (Gotti stating his opinion that the Government had not responded to his plea offer for four weeks because they were "going through a couple of things" and "they're going to question Michael DiLeonardo probably ... Do you have a list of things in the last five or six years to make a case against John?"; and stating to Ruggiero that the only way the Government could build a case "is through yous" ... "The people who see me in jail is one, two, three.").

**29.** *See* 10/5/03 Tr. Sess. 58 at 11–12, Ex. Q to 7/12/06 Carnesi Letter (stating to Ruggiero that he told his lawyer he was "not gonna forfeit the rest of my life. Walk away from New York state. Go on paper for 10 years, to get watched for 10 years by these people. [ui] When you had no grounds to do it? [ui] with impunity" and if the Government refused his offer for a plea "that's good! We get ready for a case, if it happens, it happens, that's it. No more deals after this.").

**30.** 2/7/04 Tr. Sess. 66 at 1–3, Ex. R to 7/12/06 Carnesi Letter (stating Gotti's belief that "Fat Sal," whom he "never met ... in my life" would corroborate the claim that Gotti ordered the Sliwa attack; stating that "I don't know this kid Mike Yannotti. if he was standing right in front of me ... I couldn't tell you who he was"; stating opinion that the charges with respect to Sliwa were invented "to tarnish my father's name"; and stating

"My guess is that kid Joey [ui] ... I'm almost positive [ui]," and asking John Ruggiero, "Find out, I'd like to know" and that "Joey Boy I met with Sammy Gravano, that's it. Met him by the club."); 2/7/03 Tr. Sess. 67 at 1, Ex. S to 7/12/06 Carnesi Letter (in response to a question from John Ruggiero "What does Mikey Scars say?", stating "He's saying a guy named Mike Yannotti, who I never met in my life and Joey D'Angelo [ui]"); 3/26/04 Tr. Sess. 75 at 1, Ex. T to 7/12/06 Carnesi Letter (stating that he had read in a column about "Mike Yanotti," and that "they said they found a beeper nearby" that he had never met Mike Yanotti and asking "what good is it unless you know somebody who actually knows, who actually was there.").

**31.** *See People of Territory of Guam v. Ojeda,* 758 F.2d 403, 408 (9th Cir.1985) ("Cases interpreting section 801(d)(2)(A) are in agreement that statements need not be incriminating to be admissions. For statements to constitute admissions they need only relate to the offense.").

**32.** *See, e.g.,* 5 Weinstein's Evidence § 801.30[1] at 801–43–47.

**33.** *See, e.g., United States v. Zahrey,* 963 F.Supp. 1273 (E.D.N.Y.1997) (holding that "[a]n admission must be contrary to the party's position at trial," even if statement only circumstantially contradicts party's position).

ited exception for statements against interest under Rule 804(b)(3), which must be against the declarant's interest at the time when made.[34]

■ Nonetheless, these statements must be excluded under Rule 403. The Government argues that statements contemplating a plea are probative of Gotti's guilt. But the fact that Gotti sought to engage in plea negotiations prior to charges being brought against him is no more indicative of guilt than a desire to pre-empt prosecution or to limit his exposure to a lengthy sentence. The probative value of the proffered statements is minimal for two distinct reasons, *first*, they are extraordinarily vague, lacking any detailed admission of criminal conduct,[35] and *second*, they are undercut by Gotti's denials that he committed the alleged crimes.

The Government also offers the statements to show Gotti's state of mind in 2003 and 2004, to wit, his preoccupation with impending charges, relevant *first*, to provide a context for Gotti's statements that he had withdrawn from the mafia, and *second*, to show his awareness of the threat posed by DiLeonardo's cooperation

and his motives for the alleged witness tampering. However, it is not necessary to introduce statements regarding Gotti's contemplation of a plea for these purposes. The parties have agreed to admit other, less prejudicial statements evidencing Gotti's awareness of the impending prosecution.[36] Contrary to the Government's letter, Gotti has not objected to the Government's proposal to introduce statements from Session 28 in which Gotti complains that DiLeonardo is going to "try to destroy my life." [37]

Furthermore, the prejudicial effect of these statements outweighs any probative value. The jury should not be permitted to draw the inference of Gotti's guilt from the fact that he engaged in plea discussions. Although Rule 410, by its terms, only precludes statements "made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty," the policy behind the rule of encouraging plea negotiations supports exclusion of these statements.[38] Allowing the Government to admit these statements could deter future defendants from requesting that his attorney explore a possible plea.

---

**34.** *See* 5 Weinstein's Evidence § 801.30[1] at 801–48. *Cf. United States v. Palow*, 777 F.2d 52, 56 (1st Cir.1985) ("Rule 801(d)(2)(A) *simply* requires that the admission at issue be contrary to a party's position at trial") (emphasis added) (citing *Butler v. Southern Pacific Co.*, 431 F.2d 77, 80 (5th Cir.1970)); *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1548 n. 6 (11th Cir.1984) ("An admission must *only* be contrary to the trial position of the party against whom it is offered") (emphasis added).

**35.** *Cf. United States v. Gamboa*, 320 F.3d 328, 328–30 (2d Cir.2003) (defendant's admissions to Colombian prosecutors, including detailed descriptions of his drug trafficking activities, were admissible).

**36.** *See* 7/11/03 Tr. Sess. 28 at 1–3, Ex. to Ray Brook Wiretap Transcripts to Be Offered by

John A. Gotti (discussing the need to raise money to defend against imminent charges).

**37.** 7/11/03 Tr. Sess. 28 at 2, Ex. to Raybrook Recordings the Government Seeks to Admit at Trial.

**38.** *See United States v. Valencia*, 826 F.2d 169, 173 (2d Cir.1987) (affirming, on an interlocutory appeal by the Government, district court's pre-trial order excluding informal discussions between prosecutor and defense counsel concerning the defendant's release on bail, where statements did not constitute an admission by the defendant of any "element of the offense" and introduction would "pose some threat to chilling the prospects for plea negotiations" although statements did not fall under Rule 410).

## VI. CONCLUSION

For the foregoing reasons, Gotti's motion in limine to admit the disputed portion of Session 20 of the Raybrook Recordings is granted, and Gotti's motion to admit the disputed statements from Sessions 56, 61, and 62 is denied. The Government's motion to introduce the disputed portions of Sessions 42, 49, and 53 is denied. The Clerk of the Court is directed to close this motion (Docket No. 225).

SO ORDERED.